## ASA P. MORSE & others *vs.* WILLIAM H. HILL & others.

Suffolk.   March 14, 1881; Nov. 22, 1882. — Oct. 19, 1883.   DEVENS &
HOLMES, JJ., absent.   C. ALLEN, J., did not sit.

If a trustee conveys trust property to himself, the conveyance may be avoided by
a part only of the *cestuis que trust.*

A leasehold estate was held in trust under a will, by the terms of which the trus-
tees were to pay the income to each surviving child of the testator for life, and
on the death of each child to transfer such child's share to his children.   The
trustees were empowered to convey any of the trust property discharged of the
trust.   In 1872, the trustees, without fraud, conveyed for less than its fair value,
an undivided portion of the leasehold estate, through a third person, to two of
their number, who then owned the remaining undivided portion of the estate.
In 1875, the beneficiaries under the will knew of the transaction.   In 1877, on
their petition, the then trustee was removed by the Probate Court, and a new
trustee was appointed.   In 1880, a bill in equity was brought by the new trustee,
and by some of the beneficiaries, to set aside the conveyance.   *Held,* that the
plaintiffs had not been guilty of such laches as to prevent their maintaining
the bill.

If trustees under a will convey trust property to themselves through a third per-
son, for an inadequate consideration, though without fraud, and subsequently
render an account to the Probate Court, in which the conveyance to the third
person is stated, and a decree is made, these proceedings do not operate as a bar
to a bill in equity for a reconveyance of the property, brought by a new trustee
and the beneficiaries against persons to whom the former trustees conveyed the
property, the new trustee and some of the beneficiaries not having been parties
to the probate proceedings.

A bill in equity, not waiving an answer under oath, alleged that a trustee conveyed
property to himself through a third person, and then conveyed it to the defend-
ant; and that the defendant took the conveyance, not in good faith and for
value, but well knowing the premises, and having actual notice that the con-
veyance had been unlawfully made by the trustee to himself.   The answer,
under oath, denied knowledge or notice of any unlawful conveyance.   *Held,*
that the answer did not have the effect of requiring evidence of more than one
witness to establish the facts alleged.

Findings of fact, by a master in chancery, from the testimony of witnesses whom
he sees, will not be reversed by this court unless they are shown to be clearly
erroneous from the evidence reported.

On a bill in equity by a trustee under a will and some of the *cestuis que trust,* to set
aside a conveyance of a fractional part of a leasehold estate by former trustees
under the will to themselves, it appeared that all of the *cestuis que trust* were not
agreed in desiring to avoid the conveyance, and that their interests could not
be separated; that the trustees had a general power to convey the trust prop-
erty, and intended no actual fraud by the sale to themselves; that there were
future interests in the trust, which were not represented, except by the trustee;
that considerable time had elapsed since the conveyance; and that persons
other than the trustees had acquired interests in the property for valuable con-
siderations, and without fraud.   *Held,* that the court would allow the defend-
ants to retain the property, on paying the difference between the amount for
which the trustees conveyed it to themselves and its then fair value, and inter-
est, with annual rests.

FIELD, J.  In 1872, four persons, who had been appointed trustees under the will of Thomas Whittemore, sold and conveyed, through one Comee, to Otis T. Ruggles and Joseph Whittemore, two of their number, six fourteenths of a leasehold estate in Cornhill in Boston, belonging to the trust; and this bill in equity is brought by the present trustee and three beneficiaries under the will, for the purpose of obtaining a reconveyance of this property to the trust, and for other incidental relief.

The four trustees were Otis T. Ruggles and John E. Cowles, sons in law of the testator, and Joseph Whittemore and Benjamin B. Whittemore, his sons.  Benjamin B. Whittemore died on March 16, 1876; Ruggles died in March, 1877; Cowles ceased to be trustee before the removal of Joseph Whittemore, in what manner does not appear; and Joseph Whittemore was removed from the trust by the Probate Court on May 1, 1877.  Morse, the present sole trustee, was appointed on January 15, 1878.

At the time of this conveyance, Ruggles and Joseph Whittemore owned the remaining eight fourteenths of the leasehold estate, of which seven fourteenths were subject to a mortgage given by them to the trustees.  The consideration for the conveyance was $10,350, of which the sum of $350 was paid in cash, and the remaining $10,000 was added to the $10,000 remaining unpaid on the existing mortgage, and a new mortgage on the whole estate for $20,000 was given by them to Comee and assigned to the trustees, on which the interest and $2500 of the principal have been paid.  The lease was for a term of one hundred years from August 1, 1838, reserving rent.  The exact words of the trust are not set out, but it is found by the master that the trust is, in effect, that the trustees in their discretion shall pay the income to each surviving child of the testator during life; and on his or her death, to any husband for life, and to any widow during widowhood; and on the death of both husband and wife, or on the remarriage of the widow of a deceased son, their share of the principal fund shall be transferred absolutely to their children, or, if there should be no issue living, then such share shall be added to the principal fund.  The trustees are empowered to sell and convey any of the trust property discharged of the trust, and the purchaser is exempted from any

obligation to see to the application of the purchase money. The present trustee has apparently no beneficial interest in the trust. The contingent interests of grandchildren, or of others than the tenants for life or widowhood, are not represented, unless the trustee or the tenants for life or widowhood represent them. Of the persons who have a present vested equitable interest in the trust, a part only desire that the conveyance may be avoided.

About the same time that this Cornhill property was conveyed to Ruggles and Joseph Whittemore, certain real estate in Cambridge belonging to the trust was also conveyed, through one Gardiner, by the four trustees, to Benjamin B. and Joseph Whittemore, two of their number. This conveyance the plaintiffs do not ask to have avoided. The master finds that this purchase proved unprofitable to the purchasers. The two conveyances are undoubtedly so far separate that the beneficiaries can confirm one without confirming the other.

It has been held, that a part only of the beneficiaries can avoid a conveyance of trust property made by a trustee to himself, although a part desire to confirm it. In such a case, it would seem that, if the interests can be separated, the avoidance should be confined to the interests of those who complain. If these interests cannot be separated from the rest, either the whole conveyance must be avoided, or the court must proceed in such manner as it may find most beneficial to the trust. In this case, the interests of the different beneficiaries cannot well be separated.

The case discloses that there was no actual fraud on the part of the selling and purchasing trustees, but that the price paid was less than the property was worth, and that, although they acted under legal advice, this advice was erroneous. The defences argued are laches, certain proceedings and a decree in the Probate Court, and, as to Hill and St. Clair, that they are mortgagees for value without notice.

The bill was filed January 27, 1880. The deed to the purchasing trustees was recorded on September 27, 1872. The fact of the purchase was known to Mrs. Lucas and Mrs. Whittemore, two of the plaintiffs, as early as January, 1873, but they were assured that it was legal. There is no evidence that Mrs.

Gifford, also a plaintiff, knew of it until the early part of 1875, when she with Mrs. Lucas presented a petition to the Probate Court under the advice of counsel. The bill by implication alleges that all the plaintiffs had knowledge of the conveyance in 1874; but the present trustee was not then appointed, and it does not appear that he had any connection with the estate until his appointment. Certainly, from January, 1875, it must be considered that all the plaintiffs, except the present trustee, knew of the conveyance. Mrs. Whittemore then had no vested interest in the trust, and only acquired such an interest on the death, in 1876, of her husband, Benjamin B. Whittemore. Mrs. Lucas and Mrs. Gifford were acting under the advice of counsel. The account filed by the trustees in the Probate Court on March 23, 1875, shows the consideration of the conveyance to Comee. From that time, if not before, all the plaintiffs except the present trustee must have known the price paid. It is clear that these *cestuis que trust* did not intend to confirm the sale.

On November 11, 1875, the counsel for Mrs. Lucas and Mrs. Gifford, in behalf of his clients, gave formal notice to Mr. Hill that his title would be contested. In April, 1877, Mrs. Whittemore, with Mrs. Lucas and Mrs. Gifford, presented a petition to the Probate Court for the removal of Joseph Whittemore, then the sole trustee, on account of alleged breaches of trust, among which was this conveyance to himself; and in May, 1878, Mrs. Whittemore and Mrs. Lucas filed a paper in the Probate Court, in which they stated that they did not acquiesce in the sale, and were "about to prepare a petition to the said honorable court to have the trustee now appointed by the said court bring a bill in equity to recover the land and other real estate, lease, &c., conveyed as aforesaid, and to have it reconveyed to the said trust estate."

No reason appears why the dissatisfied beneficiaries did not immediately bring a bill in equity when they first learned of the conveyance, and of the price paid for it, and first knew that they had a right to avoid it. The appointment of a new trustee was not necessary to enable them to bring a bill. The rights and duties of a new trustee, in such a case as this is, may not be in all respects identical with those of the living *cestuis que trust*. The trust concerns persons who are not in being, or whose

interests are future and contingent. The doctrine that the *cestuis que trust* can within a reasonable time avoid such a conveyance, even although it is beneficial to the trust, and that, if they desire to avoid it, courts will not inquire whether it is beneficial or not, must be subject to some limitations. If all the beneficiaries are living and *sui juris*, their election to confirm or avoid the conveyance, if made within a reasonable time, may well be taken to be controlling; but if there are future and contingent interests not represented by them, it would seem to be the duty of the court to protect these interests, as well against the beneficiaries who have only a life interest as against the trustees, and to be the duty of an incoming trustee to protect all the interests of the trusts.

The *cestuis que trust*, if they represent the whole beneficial interest, can insist upon a reconveyance of the property from the purchasing trustee, or from any person who purchased from him with notice or knowledge that he has purchased from himself; but the purchase money must be repaid with interest, and, when there has been no actual fraud, permanent improvements must be paid for; and the purchaser must account for rents, profits, and waste. If the *cestuis que trust* do not wish a reconveyance, the property can be put up for sale either absolutely or at a minimum price. If the purchasing trustee has sold the property, he can be held to account as trustee for the price he has received; or if the property remains unsold in his hands, the *cestuis que trust*, if they so elect, can compel him to account for its actual value, at the time of the purchase. The first two remedies can only be given by a court of equity, when the title to the property has passed out of the trustee; the last two can also be given by a court of probate, if the accounts are settled in that court.

On September 9, 1879, the accounts of the trustees were allowed, with certain alterations, and the judge of probate passed upon all matters in controversy in the third, fourth, and fifth accounts of the trustees, disallowing certain charges and investments, none of which apparently relates to the Cornhill estate. These accounts contain as items the sale to Comee for $10,350, and the loan on mortgage to Otis T. Ruggles and Joseph Whittemore of $17,500, which is the balance due on the note for

$20,000, given by them at the time, and as a part of the transaction of the sale of the leasehold estate. On October 29, 1872, Hill took his title from Ruggles, by a deed absolute in form, but in fact taken as collateral security. Ruggles's equity in this security was conveyed by him to Joseph Whittemore on December 11, 1873, as collateral security for his indorsements; and on February 3, 1875, Ruggles, was adjudged a bankrupt, and his assignees, in January, 1877, conveyed all his interest in the lease to the wife of Hill, who procured and paid for it for the purpose of aiding his title.

On June 19, 1874, Joseph Whittemore conveyed to his wife, through one Taylor, his one half of the lease, subject to the mortgage assigned to the trustees which had been given by him and Ruggles on the whole lease. There was no consideration for this conveyance. On January 17, 1877, Mrs. Whittemore mortgaged this one half to St. Clair, her father, to secure her note for $3000, for money lent to her husband, and on January 14, 1878, Joseph Whittemore became a bankrupt. The conveyance of Whittemore to Taylor states that it was in consideration of one dollar and an oral agreement by Taylor forthwith to assign the same to Whittemore's wife, and in the conveyance by Taylor to Mrs. Whittemore this oral agreement is referred to. As the conveyance to Mrs. Whittemore was without consideration, she has no equity beyond that of her husband, and the same is true of the conveyance to Mrs. Hill, which was procured by her husband. It does not appear that any notice was ever given to St. Clair that these plaintiffs intended to contest his title. The indebtedness of Ruggles to Hill was, and has ever since continued to be, much more than the value of the interest in the lease transferred to Hill. The principal and a part of the interest of the St. Clair mortgage remain unpaid.

What constitutes laches depends upon the particular circumstances of the case; but, in such a case as this, the word is rarely used in reference to proceedings against trustees. A trustee is disabled from purchasing trust property for himself. If all the beneficiaries are *sui juris*, they can authorize such a purchase, can ratify and confirm it after it has been made, or can acquiesce in it for so long a time that courts will refuse to disturb it; but the facts of this case do not show acquiescence

as against the trustees or their representatives. A somewhat stricter rule, like that of laches, may well be held when the rights of other persons are involved, who have taken convey ances of the property for value, without actual fraud. One inquiry always is, whether such persons have suffered by the delay. In this case there has been a loss of testimony by the death of Benjamin B. Whittemore and Ruggles, but they both died after Hill received the notice that his title would be con tested, and the two remaining trustees are living, both of whom naturally desire that the conveyance shall stand. Ruggles has become a bankrupt, but the bankruptcy was before the notice to Hill. Joseph Whittemore has become a bankrupt, and this bankruptcy was after the conveyance to his wife and the mort gage to St. Clair; but St. Clair took her note, not his. It can not be held that there had been laches up to the time of the giving of the notice to Hill. It is argued that Hill was justified in thinking that, after so much delay, no action was intended by the plaintiffs. Nothing was said or done by the plaintiffs that justified such an opinion, except the delay. An examination of the proceedings in the Probate Court would have shown him that the *cestuis que trust* who are plaintiffs did not acquiesce in the conveyance. It does not appear that anything has been done by Hill to his prejudice, since the notice to him, in conse quence of a belief that they had abandoned the intention of pro ceeding against him, or that he ever made any inquiry of them to ascertain if they had changed their intention. The delay is far within the statute of limitations applicable to real property, which this lease under our statutes in many respects is. Under the circumstances, we cannot hold that there has been such laches as to prevent the plaintiffs from maintaining their bill. See note to *Fox* v. *Mackreth*, 1 White & Tudor Lead. Cas. in Eq. 123; *Hayward* v. *Ellis*, 13 Pick. 272; *Litchfield* v. *Cud worth*, 15 Pick. 23; *Yeackel* v. *Litchfield*, 13 Allen, 417; *Clark* v. *Blackington*, 110 Mass. 369; *Learned* v. *Foster*, 117 Mass. 365; *Davoue* v. *Fanning*, 2 Johns. Ch. 252; *Michoud* v. *Girod*, 4 How. 503; *Hayward* v. *National Bank*, 96 U. S. 611; *De Bussche* v. *Alt*, 8 Ch. D. 286.

The Probate Court, on a hearing upon the accounts, is neces sarily confined to an allowance or disallowance of the disposition

made by the trustees of the trust property, including the investment of it, and to determining the amount of money for which they shall stand charged.   The Probate Court had no jurisdiction over other persons than the trustees, to compel a reconveyance of trust property unlawfully or improperly conveyed to them.   If the three beneficiaries who are plaintiffs had elected before the Probate Court to charge the trustees for the reasonable value of the property conveyed, and this had been determined in the Probate Court, they could not, without the leave of that court, certainly in that court, bring the amount in question again.   Pub. Sts. *c.* 144, § 9.   But if this amount was not paid by the trustees, and a loss would otherwise happen to the trust, the beneficiaries could pursue the property itself in a court of equity, so long as the trust attached to it, for the purpose of reimbursing the trust.   When the accounts were presented, and when many of the hearings were had, the St. of 1879, *c.* 161, had not been passed, and it does not appear that a guardian *ad litem*, or next friend, was appointed to represent any interests not represented otherwise than by the persons before the court.   The decree is not, therefore, final and conclusive against unborn and unascertained beneficiaries.   The present trustee does not appear to have attended the hearings before the Probate Court on the accounts, or to have had notice of them.   It does not appear that the three beneficiaries before that court distinctly elected that the purchasing trustees might retain the lease, and that the trustees should be charged with what the interest conveyed was worth at the time of the conveyance ; or that any hearing was had on the accounts as to the value of that interest.   The only evidence of a hearing on the market value of the lease that appears to have been had, was on the petition for the removal of Joseph Whittemore.

We consider this bill, so far as it is brought by the present trustee, as brought for the purpose of protecting all the beneficial interests in the trust, and that the court in reference to the remedy afforded is not necessarily to be governed by the wishes of the *cestuis que trust* who desire to avoid the conveyance.   If the sole purpose of the bill was to charge the original trustees with a larger sum than they were charged with in the Probate

Court, this court might well decline to consider the case, and leave the parties to that court.

It is true that the Probate Court, in determining all matters in controversy between the parties before it, and in allowing the accounts with the changes made, in effect passed upon the sale to Comee, and upon the mortgage of $20,000 to Comee, which was assigned to the trustees, and approved them; but, on the face of the accounts, it did not appear that Comee bought for the two trustees, and it does not appear that the questions, whether the two trustees should be permitted to retain the property, and, if so, at what amount they should account for it, were submitted to the Probate Court and distinctly adjudicated by that court. The proceedings and decree of the Probate Court cannot be considered a bar to this bill, in which the trustee is a party plaintiff, representing all the beneficial interests, and of which the principal object is to obtain from strangers to the proceedings in the Probate Court a reconveyance of the property to the trust. *Saxton* v. *Chamberlain*, 6 Pick. 422. *Jennison* v. *Hapgood*, 14 Pick. 345. *Wiggin* v. *Swett*, 6 Met. 194. *Morgan* v. *Rotch*, 97 Mass. 396.

As a court of equity can, if the circumstances of the case seem to justify it, authorize trustees to purchase of themselves, it is not doubted that such a court has power to ratify and confirm such a sale after it has been made; but, as it is found that these purchasing trustees did not pay all that the property was worth, and that the selling trustees did not use due diligence to obtain for it what it was worth, a court of equity would not confirm this sale.

The exceptions to the master's report are, that he found that Hill and St. Clair knew, at the times respectively when they received their conveyances, that Ruggles and Joseph Whittemore purchased the property from the trustees, of whom they were two; and that St. Clair also knew that Mrs. Whittemore received her conveyance, without consideration, from her husband, through Taylor.

The knowledge or want of knowledge of Mrs. Hill and Mrs. Whittemore, so far as the interests remaining in their hands are concerned, is immaterial; because the one received her conveyance by the procurement of her husband, and the consideration

was paid by him, and the other gave no consideration for the conveyance.

The bill did not waive the oaths to the answers, and both Hill and St. Clair have answered under oath, and their answers have been read in evidence. Answers in equity may be sufficient as pleadings, if no exception to them is taken, and yet not be sufficiently full, explicit, and unequivocal to be used as evidence. The answer of Hill on this point is, " that this defendant took said conveyance in good faith and for a valuable consideration; that he had no notice of any unlawful transfer or conveyance of said property by the trustees named in the plaintiffs' bill." The answer of St. Clair is, " that this defendant had no knowledge or notice of any unlawful sale or conveyance of said leasehold property by the trustees named in the plaintiffs' bill; and denies that any such sale is voidable as against this defendant; and denies that neither Joseph Whittemore nor said Nancy E. could convey a good title against said plaintiffs, as alleged in said bill." The bill, after reciting in detail the conveyance of the trustees through Comee to Ruggles and Joseph Whittemore, two of the trustees, and the conveyance by Ruggles to Hill, alleges " that the said Hill took the said conveyance, not in good faith and for value, but well knowing the premises above recited, and having full record and actual notice that a part of said lease had been unlawfully conveyed as aforesaid by said trustees to themselves, and that a title to such portion of said lease could not be legally conveyed to himself by the said Otis." The bill also alleges " that the said Nancy E." (Whittemore) " gave only a nominal consideration for the conveyance " (the conveyance to her); and " that the said St. Clair took the said mortgage with full knowledge of all the premises herein set forth, having in particular full record and actual notice of said unlawful sale or transfer by said trustees to themselves."

Neither the answer of Hill nor that of St. Clair contains a distinct denial that they did not know that Ruggles and Joseph Whittemore were two of the trustees, and were purchasers from the trustees. Hill denies notice of any unlawful conveyance, and St. Clair denies knowledge or notice of any unlawful sale or conveyance. Each may have known the fact of the conveyance by the trustees to two of themselves, but may have had

neither notice nor knowledge that it was unlawful. There is nothing in St. Clair's answer that amounts to a distinct denial that he did not know that Mrs. Whittemore got her conveyance from her husband without consideration. These answers, therefore, cannot have the effect of requiring evidence more than that of one witness in order to establish the facts alleged in the bill. *Farnam* v. *Brooks*, 9 Pick. 212, 249. *Parkman* v. *Welch*, 19 Pick. 231, 234.

Assuming that both Hill and St. Clair are *bona fide* purchasers for value, and that the burden is on the plaintiffs to prove notice or knowledge on their part of such facts as will affect the property in their hands with the trust, the question is, whether there was sufficient evidence to warrant the finding of the master that they had actual knowledge that Ruggles and Whittemore were trustees and purchased of the trustees. Whether they had constructive notice by reason of the record of the conveyances, is a distinct inquiry. The findings of fact by a master, from the testimony of witnesses whom he sees, are not to be reversed, unless they seem to the court on the evidence reported to be clearly erroneous. Conceding that facts cannot be established by not believing witnesses who deny them, and that there must be such affirmative evidence as, if believed to be true, with the inferences of fact that may properly be drawn from it, will support the findings, we think there is sufficient evidence to warrant the findings of the master. in regard to the knowledge of Hill and St. Clair. It is uncertain whether all of the evidence has been reported relating to knowledge by St. Clair that Mrs. Whittemore received the conveyance to her without consideration from her husband; but this exception has not been pressed, and the evidence reported seems sufficient to warrant this finding.

In cases of this kind courts of equity have undoubtedly generally held that *cestuis que trust* are entitled to a reconveyance if they desire it, and can only be compelled to take money instead if they elect so to do, or when, from the interests acquired by innocent parties, a reconveyance cannot be decreed. But in this case, — as the living *cestuis que trust* are not agreed in desiring to avoid the conveyance, and their interests cannot be separated; as the property conveyed is a fractional part of a leasehold

estate, of which the value must decline as time goes on; as no actual fraud was intended; as there are future interests in the trust which are not represented, except by the trustee, and the wishes of these beneficiaries cannot be known; as considerable time has elapsed since the conveyance, and other persons than the trustees have acquired interests in the property for valuable considerations, and, so' far as appears, without any fraudulent intention; and as the trustees had power to sell and the purchasers were exempt from any obligation to see to the application of the purchase money, — we think it is in the power of the court to permit the defendants to retain the property, and to pay the trustee such a sum of money, in addition to the $10,350 originally paid or secured, as is required to make up the consideration of the purchase to the sum which the property conveyed was at that time reasonably worth, and that this ought to be done. To this amount interest with annual rests should be added, at the rate of six per cent per annum, of which the principal belongs to the trust fund, and the interest is to be distributed by the trustees among the beneficiaries entitled thereto. If the defendants, or some of them, within one month from the date of the rescript to be filed in this case, elect to file a bond in a penal sum, with sureties to be approved by a justice of this court, conditioned to pay to the trustee such an amount, with interest as aforesaid, and costs, within thirty days after the amount is determined, then, on the approval of such a bond, the case may be sent to a master to hear the parties and report the amount due. If the defendants, or some of them, do not so elect, then there must be a decree for a reconveyance.

The parties must be put as nearly as possible *in statu quo*. Mr. and Mrs. Hill must convey to the trustee three fourteenths of their interest in the lease, free from incumbrances made or suffered by them, and the decree must declare that they hold their interests in the remaining four fourteenths to their own use, of which seven twenty-eighths only is subject to the mortgage assigned to the trustees. Mr. St. Clair and Mrs. Whittemore must also convey to the trustees three fourteenths of their interest in the lease, free from incumbrances made or suffered by them, and the decree must declare that they hold their interests in the remaining four fourteenths to their own use, of which

seven twenty-eighths only is subject to the mortgage assigned to the trustees. The mortgage assigned to the trustees must be declared to be a subsisting mortgage for one half of the principal and interest now due upon the note, and a mortgage only upon one half of the lease, and proper conveyances and discharges must be executed by the trustee. An account must be taken, in which the $350 originally paid and one half of the $2500 subsequently paid, with simple interest thereon at six per cent per annum, must be credited Ruggles and Joseph Whittemore and their successors in interest. There must also be credited them one half of the interest paid on the mortgage, with simple interest thereon at the rate of six per cent per annum from the times of payment; also six fourteenths of the value to the leasehold estate of any permanent improvement they have made upon it in good faith since the conveyance to them. They must be debited with the net rents and profits which have been received from six fourteenths of the lease, after deducting rents paid, taxes, premiums of insurance, and expenditures incurred for ordinary repairs, and in the care and management of the property, with simple interest thereon at six per cent per annum; and also debited with six fourteenths of any diminution in the value of the lease by reason of any acts of waste committed by them. The master's report must distinguish by whom the interest has been paid, and the rents and profits have been received, and by whom the improvements have been made and the acts of waste done. Ruggles and Joseph Whittemore are not entitled to commissions on the rents collected or paid. The form of the conveyances and discharges must be settled by the master, and the case must be reserved for further direction on the coming in of the master's report.

*Ordered accordingly.*

*R. M. Morse, Jr. & H. L. Harding,* for the plaintiffs.

*N. Morse & J. L. Thorndike,* (*H. G. Allen* with them,) for the defendants.