M. FAYETTE DICKINSON, JR. & another *vs.* BRADFORD DURFEE & another.

Bristol. Oct. 29, 1884. — May 8, 1885. C. ALLEN & COLBURN, JJ., absent.

In 1855, a guardian, acting under a license from the Probate Court, and intending to convey her two minor wards' one undivided fifth each of a lot of land, in which she had an estate of dower, by mistake conveyed "two undivided fifths of two undivided thirds" of the lot. Through the agency of G. she became the purchaser, and made improvements, and in 1867, after the wards became of age, conveyed the land to G., who made costly improvements. The guardian did not invest the proceeds of the sale for the wards' benefit, and did not pay over or account for the same. The wards did not know of her transaction with G., and had only a general knowledge of the visible improvements. *Held,* on

a bill in equity by the assignees in insolvency of G., filed in 1880, against the former wards, to prevent them from setting up a title to the land, that the bill could not be maintained.

HOLMES, J. On May 24, 1855, Fidelia B. Durfee, acting under a license from the Probate Court, went through the form of a sale, intended to convey the interests of Bradford Durfee and Phebe B. Durfee, her children and wards, in certain land which came to them by descent from their father. These interests were one fifth each, subject to a life estate in Fidelia by way of dower, but by mistake the deed purported to convey two undivided fifths of two undivided thirds. Fidelia became the purchaser at the sale, through one George B. Durfee, who acted as her agent and conveyed to her a few days later. She already owned the other three fifths of the estate, and after the sale occupied the premises and made improvements upon them. In 1867, she sold them to said George B. Durfee, who occupied them in turn, and made further and very expensive improvements. Bradford Durfee came of age in May, 1856, and Phebe in 1863. This bill in equity, filed December 29, 1880, is brought by the assignees in insolvency of George B. Durfee, the above-named purchaser from Fidelia, against Bradford and a voluntary grantee of Phebe with notice, to prevent their setting up title by reason of the defects in the conveyance and proceedings of Fidelia as guardian, and to compel them to execute releases. The answer alleges, and the master's report finds, other defects in the proceedings, by reason of non-compliance with statutory requirements; and the defendants contend that the whole transaction is incurably void.

We are content to assume, for the purposes of this case, that, even if the conveyance of her wards' interest in the land by Fidelia Durfee was void by reason of a failure to comply with statutory conditions, still equity might give relief under some circumstances. *Wortman* v. *Skinner*, 1 Beasley, 358, 379 *& seq.* *De Riemer* v. *Cantillon*, 4 Johns. Ch. 85. But when the equitable relief is sought in aid of an attempt, however innocent, by a mother and guardian to purchase her wards' and childrens' property, circumstances which might be sufficient to repel the wards if they were the actors are not necessarily sufficient to set the process of the court in motion against them. We are of

opinion that the facts disclosed are not sufficient to entitle the plaintiffs to relief.

The master reports, that the guardian never invested the proceeds of the sale for the benefit of her wards, that she never paid over the proceeds of the sale to them, and that she never accounted with them or with the Probate Court for said proceeds. The evidence warranted these findings. He also reports, that neither of the wards had any knowledge of the transactions of their guardian, or of the dealings between her and George B. Durfee, or of the defect in the title, until its recent discovery. They had only a general knowledge of the visible improvements made, as we have stated. On the other hand, George B. Durfee purchased with notice, not only of technical defects appearing of record in the sale by the guardian, but of the fact that she purchased at the sale, for it was through his agency that she did so. The assignees of George stand in no better position, as to the defects in the conveyance and proceedings against which they seek to be relieved.

The counsel for the plaintiffs argues, that, if the wards have not received the proceeds of the sale, it is due to their own neglect, and that they could have cited the guardian to account in the Probate Court. Without further considering the sufficiency of this argument as a ground for affirmative relief in a case like this, it is enough to say that the wards could only have cited the guardian to account on the footing of an affirmance of the sale. Their right in case they disaffirmed it was, not to an account, but to the land. What has happened to prevent their setting up that right? Not their omission to seek possession of the land. They were not entitled to it, because, if they elected to disaffirm the sale, the life estate of Fidelia revived. *Walker* v. *Walker*, 101 Mass. 169. Not their retention of the proceeds of the sale. They never received them; and if they had, it has never been suggested, so far as we know, that the mere receipt of proceeds as part of the corpus of an estate, without knowledge of the sale or that the funds came from that source, would deprive the wards of their right to avoid, although it might affect the terms on which they would be allowed to do so. *Yeackel* v. *Litchfield*, 13 Allen, 417. Finally, no *bona fide* purchaser has come in, as in *Robbins* v. *Bates*, 4 Cush. 104. It seems to us,

therefore, that the originally inequitable character of the plaintiff's title so far continues, that, as the case now stands, the bill must be dismissed. See *Morse* v. *Hill*, 136 Mass. 60, 66.

*Bill dismissed.*

*J. M. Morton,* for the plaintiffs.

*J. Brown,* for Bradford Durfee.

*T. M. Stetson,* for the other defendant.