JOSEPH A. LOCKE, administrator *de bonis non* with the will annexed, *vs.* OLD COLONY TRUST COMPANY & others, executors.

Suffolk. November 21, 22, 1932. — January 19, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Probate Court,* Decree, Appeal, Jurisdiction, Proceedings in equity, Accounts. *Supreme Judicial Court,* Moot question. *Executor and Administrator. Trust,* What constitutes, Constructive. *Fiduciary. Lien. Sale,* Validity. *Equity Jurisdiction,* Tracing of property, Of probate court.

A petition in equity in a probate court by an administrator *de bonis non* with the will annexed against the executor of the will of the wife of one who had been the son and one of two executors of the will of the petitioner's testator, such two executors and another also being re-

siduary legatees under that will, sought to charge with an equitable lien identifiable proceeds, in the possession of the respondent, of an alleged fraudulent sale of shares of stock belonging to the estate of the petitioner's testator by his said son to himself, which proceeds were averred to have been transferred by the son to his wife, the respondent's testatrix. Averments of fact upon which the petitioner relied were in substance as follows: The will of the petitioner's testator contained a provision that his said son, the executor whose conduct was alleged to have been fraudulent, "shall have the first and prior right and authority if he so desires to purchase from my estate the whole or any part of" the shares of stock, which were included in the executors' inventory, "for his sole and separate use." He, knowing the market value of the stock and falsely and fraudulently misrepresenting that value to his coexecutor, sold it to himself at a grossly inadequate price, and did not disclose the facts as to value to his coexecutor and coresiduary legatees during their lifetime. Subsequently he sold the stock at a large profit and invested the proceeds in bonds which, before his death, he transferred to his wife, the respondent's testatrix, she giving no consideration therefor and well knowing the facts above stated, and such bonds still were in the possession of the respondent. No account had been filed by the fraudulent executor during his lifetime, but his personal representative had filed an account for him less than eight months before the present petition was brought, and statements in the account first brought to the attention of interested parties the facts above set out as showing fraud. The respondent demurred to the petition. The demurrer was sustained and a final decree was entered dismissing the petition without prejudice to the right of the petitioner to commence such proceedings as might be proper after adjudication on the account filed for the fraudulent executor by his personal representative. *Held,* that

(1) The questions raised by the petition had not become moot by reason of the terms of the final decree;

(2) This not being a proceeding against the estate of the fraudulent executor or a proceeding to compel his personal representative to account for property of the petitioner's testator, it was not barred by reason of the fact that the account of the fraudulent executor had not been adjudicated;

(3) The petition stated a case for relief within the scope of general equity jurisdiction, in that upon its averments the identifiable proceeds of the sale of the corporate stock came, by reason of his fraud, into the possession of the fraudulent executor upon a constructive trust, or subject to an equitable lien, for the benefit of the estate of the petitioner's testator, and the fraudulent executor's wife and the respondent as executor of her will held such proceeds subject to the same trust or lien;

(4) The petition was within the jurisdiction in equity of a probate court as defined in G. L. (Ter. Ed.) c. 215, § 6;

(5) The petition was not multifarious in that a proceeding in probate and a proceeding in equity were combined therein.

PETITION, filed in the Probate Court for the county of Suffolk on December 9, 1931, and described in the opinion.

The respondents demurred to the petition. The demurrer was heard by *Poland*, J., and was sustained, and the final decree described in the opinion was entered. The petitioner appealed.

*L. Brown*, (*J. A. Locke, J. A. Baldwin*, & *H. P. Moulton* with him,) for the petitioner.

*A. W. Rockwood*, for the respondents.

FIELD, J. This petition in equity was brought in the Probate Court by the administrator *de bonis non* with the will annexed of the estate of Frances Taylor, late of Boston, against the executors of the will of Mary E. Taylor, also late of Boston. The petitioner prays that his claim to recover the profit realized by William Taylor from the sale by him, as one of the executors of the will of Frances Taylor, to himself as an individual, of one hundred forty-one shares of Post Publishing Company stock be established, that it be decreed that the petitioner is entitled to an equitable lien upon such assets of the estate of Mary E. Taylor now held by the respondents as executors under her will as shall be shown to represent in their converted form a part of the proceeds of such sale, that the lien be foreclosed and the respondents ordered to pay to the petitioner the amount received from such foreclosure to which he is entitled, and that the claim of the petitioner, to recover from the executors the amount of the unjust enrichment of Mary E. Taylor or her estate to the extent of the profit realized by William Taylor from the sale by him of such shares of stock and given by him to said Mary E. Taylor, be established. A demurrer to the petition stating ten grounds was sustained generally and thereafter a decree was entered dismissing the petition "without prejudice to the right of the petitioner to commence such proceedings as may be proper, if any, following the adjudication of the account of William Taylor, formerly one of the executors of the will of Frances Taylor, rendered by the Old Colony Trust Company, administrator with the will annexed of the estate of William Taylor, de-

ceased." The petitioner appealed from the decrees sustaining the demurrer and dismissing the petition.

The allegations in the petition are substantially as follows: Frances Taylor died August 23, 1914, leaving as her only heirs at law and next of kin William Taylor and Albert M. Taylor, sons, Mary Taylor Evans, a daughter, and Paul T. Rothwell, a grandson. She made a will dated December 13, 1912, and a codicil thereto dated January 2, 1913, which were duly allowed. At the times of making her will and her codicil Frances Taylor owned two certificates of stock of the Post Publishing Company, a Massachusetts corporation, one for ninety-one shares standing in her own name and one for fifty shares standing in the name of her deceased husband. Shortly before her death she indorsed the certificate for ninety-one shares and placed it in the hands of her daughter Mary Taylor Evans, and indorsed the other certificate as administratrix of the estate of her husband and placed it in the hands of her son William Taylor. By her will and her codicil she gave the residue of her estate to her three children in equal shares, subject to certain charges for advances, and provided further that "my said son William Taylor shall have the first and prior right and authority if he so desires to purchase from my said estate the whole or any part of the one hundred and forty-one shares of the stock of the Post Publishing Company now held and owned by me and forming a part of my said estate for his sole and separate use." Mary Taylor Evans and William Taylor were named as executors. On November 19, 1914, Frances Taylor's children signed a document which recited in substance that Mary Taylor Evans and William Taylor held the certificates of stock referred to as assets of the estate of Frances Taylor. These one hundred forty-one shares were included in the inventory of the estate of Frances Taylor filed March 30, 1916, at the estimated value of $17,625.

On or about February 21, 1916, William Taylor purchased the one hundred forty-one shares in question "for himself and in his individual capacity" from the estate of Frances Taylor, of which he was an executor, for $16,920. Mary Taylor Evans joined as coexecutor in the indorsement of

stock certificates "relying entirely upon the assertion and misrepresentation of said William Taylor that the price he was paying therefor was a fair and adequate price for the said shares of stock." William Taylor at the time of making such misrepresentation "was an executive officer of said Post Publishing Company and well knew that said stock had a fair market value greatly in excess of the price which he proposed to pay and did pay therefor, but falsely, fraudulently, and with utter disregard for his fiduciary relationship with the said Mary Taylor Evans and the said Albert M. Taylor, grossly misrepresented and understated the fair value" thereof. William Taylor at no time disclosed to Albert M. Taylor "either the fact that he was personally purchasing said stock or the price at which he was purchasing the same, or the fact that its fair value was greatly in excess of the said price," and neither Albert M. Taylor nor his next of kin were ever informed of the facts alleged in the petition regarding the true value of the stock until the facts came to the knowledge of the petitioner after an investigation following the filing of an account of the administration of the estate of Frances Taylor by the Old Colony Trust Company as administrator with the will annexed of the estate of William Taylor, on April 20, 1931. Mary Taylor Evans relied upon the misrepresentation of the value of said stock made by William Taylor and no knowledge of the facts came to her prior to her death in May, 1920, and her heirs and next of kin first learned of the facts in consequence of the investigation of the petitioner.

William Taylor, on July 7, 1925, sold the shares of stock, with other such shares, for a price for these shares of $359,550. He caused the proceeds of the sale to be invested in government bonds, receiving in addition a small amount of cash. Before his death, on December 16, 1925, William Taylor transferred to his wife, Mary E. Taylor, substantially all the bonds acquired by him "or in lieu thereof either cash obtained by him from the sale of said bonds or other securities purchased with the proceeds realized from the sale of said bonds." Mary E. Taylor gave no consideration whatever to William Taylor for the transfer to her of the pro-

ceeds of the sale of the one hundred forty-one shares of stock and well knew at the time she received said funds that William Taylor had purchased the stock from the estate of Frances Taylor "for a price far less than its fair value and without making full disclosure to his coexecutrix" or to said Albert M. Taylor of the information and knowledge regarding the value of said stock which he possessed. Mary E. Taylor knew, or had reason to know, that the representation made by William Taylor to Mary Taylor Evans was false and fraudulent. The final account of the Old Colony Trust Company, administrator with the will annexed of the estate of William Taylor, was allowed on August 2, 1927, showing the entire estate distributed to Mary E. Taylor.

The respondents as executors of the will of Mary E. Taylor now hold property of her estate, including the proceeds, received by her from William Taylor, "originally arising out of the sale" by him of the one hundred forty-one shares of stock in question. Either the proceeds of the sale "can be traced to and have become specific investments" now held by the respondents as executors, or "during the lifetime of said Mary E. Taylor she wrongfully used and co-mingled" such proceeds "held by her upon a constructive trust for the benefit of the said Mary Taylor Evans and Albert M. Taylor or their legal representatives," and as a result thereof — as the petition alleges — the assets now held by the respondents as executors "should be charged with an equitable lien for the benefit of" the petitioner, or these respondents as executors should account to him "for the amount of the unjust enrichment of the said Mary E. Taylor, or of her estate, to the extent of the profit realized by said William Taylor from the sale by him of the said shares of the stock of the Post Publishing Company."

William Taylor during his lifetime filed no account of his administration as executor of the estate of Frances Taylor and no such account was filed until the appointment of the petitioner as administrator *de bonis non* with the will annexed of the estate of Frances Taylor on April 16, 1931, after which the Old Colony Trust Company, as administrator with the will annexed of William Taylor,

filed such an account showing the sale of the shares of stock. Since the filing of said account the petitioner "discovered for the first time the facts concerning the resale by said William Taylor of said one hundred forty-one shares of Post Publishing Company stock on July 7, 1925."

First. The appeal cannot be dismissed nor the final decree affirmed, as the respondents contend should be done, on the ground that the questions sought to be raised by the appeal have become moot.

This court does not decide moot questions. *Blume* v. *William Shenkel & Sons Co.* 266 Mass. 15. But the decree dismissing the petition was a final decree. Its effect was to decide that the petition could not be maintained without an adjudication of the account of William Taylor as one of the executors of Frances Taylor. The question so decided adversely to the petitioner was not moot and was not rendered moot, so as to deprive the petitioner of his right of appeal, by the fact that the petition was dismissed "without prejudice to the right of the petitioner to commence such proceedings as may be proper, if any," following such an adjudication. See *Hooker* v. *Porter*, 271 Mass. 441, 442, 448. Whether the Probate Court should take jurisdiction of the petition was not discretionary. Compare *Chase* v. *Russell*, 236 Mass. 417, 418; *Blume* v. *William Shenkel & Sons Co.* 266 Mass. 15, 16. The petitioner was a "person aggrieved" by the decree within the meaning of G. L. (Ter. Ed.) c. 215, § 9, permitting such a person to appeal to this court from a probate decree.

Second. The petition states a case for relief in equity within the jurisdiction of the Probate Court, even though the account of William Taylor, as one of the executors of the will of Frances Taylor, had not been allowed nor the sale of stock to himself adjudicated fraudulent in the Probate Court at the time the petition was filed.

This question is raised in various forms by the first six grounds of demurrer. The demurrer could not rightly have been sustained on any of these grounds.

On this branch of the case the only contention of the respondents is that the fact that the account of William

Taylor as an executor of the will of Frances Taylor has not been settled in the Probate Court is fatal to the petition. But in dealing with this contention it is necessary to consider the nature of the proceeding. This is not a proceeding against the estate of William Taylor nor a proceeding to compel his representative to account either in a Probate Court or elsewhere for property in the estate of Frances Taylor. Rather it is a proceeding against the representatives of the estate of Mary E. Taylor to charge property in their hands with a constructive trust or equitable lien in favor of the estate of Frances Taylor or to obtain the alternative relief of compensation for the proceeds thereof wrongly used by Mary E. Taylor.

1. The petition states a case for relief within the scope of general equity jurisdiction.

The relation of William Taylor to the property in the estate of Frances Taylor was a trust relation. *Tingley* v. *North Middlesex Savings Bank*, 266 Mass. 337. Though the will of Frances Taylor provided that he should have "the first and prior right and authority if he so desires" to purchase the stock from her estate (compare *Denholm* v. *McKay*, 148 Mass. 434, 441; *Malden Trust Co.* v. *Brooks*, 276 Mass. 464, 471), the sale of the stock by him as executor to himself as an individual being, as here alleged, a sale for an inadequate price accompanied by misrepresentation of the facts to his coexecutor, also — as was William Taylor — a residuary legatee, and without full disclosure of the facts to the third residuary legatee, was voidable if not void. *Morse* v. *Hill*, 136 Mass. 60, 64. *Manning* v. *Mulrey*, 192 Mass. 547, 550. *Vinal* v. *Gove*, 275 Mass. 235, 241. The stock, therefore, was held by William Taylor on a constructive trust and he was bound to return it to the estate or to account for its proceeds — whether the full amount or only some part thereof need not be determined. *Jennison* v. *Hapgood*, 7 Pick. 1, 7. *Morse* v. *Hill*, 136 Mass. 60, 64. *Manning* v. *Mulrey*, 192 Mass. 547, 550. And if the proceeds of such stock or those proceeds mingled by William Taylor with his own property were traceable, as here alleged, into specific prop-

erty, as distinguished from general assets (see *Yesner* v. *Commissioner of Banks,* 252 Mass. 358, 360, 361, and cases cited), such specific property was impressed with a constructive trust or an equitable lien (see *Bresnihan* v. *Sheehan,* 125 Mass. 11, 13), not only in his hands but also in the hands of Mary E. Taylor, who took such specific property without paying consideration therefor and with knowledge that the stock had been purchased by William Taylor for an inadequate price without full disclosure of the facts. *Otis* v. *Otis,* 167 Mass. 245, 246. *Sargent* v. *Wood,* 196 Mass. 1. *Hewitt* v. *Hayes,* 205 Mass. 356, 361. *Tingley* v. *North Middlesex Savings Bank,* 266 Mass. 337. *Coffey* v. *Rady,* 267 Mass. 301, 303–304.

Ordinarily a proceeding to enforce such a constructive trust or equitable lien, or, in the alternative, to obtain compensation for the wrongful use of property subject to such a trust or lien, is within the scope of general equity jurisdiction. *Otis* v. *Otis,* 167 Mass. 245. See also *Sargent* v. *Wood,* 196 Mass. 1. Undoubtedly the petitioner has a remedy through an account rendered for William Taylor, as executor of Frances Taylor, his predecessor in the trust. *Colby* v. *Stearns,* 270 Mass. 461. But since relief is here sought against the estate of Mary E. Taylor, a stranger to the estate of Frances Taylor, who had received identifiable property, and not against William Taylor as executor, or his personal representative, that remedy is not exclusive. Nor is an adjudication, upon such an account, of breach of trust by William Taylor as executor prerequisite to the maintenance of a proceeding in equity to follow that property. *Morse* v. *Hill,* 136 Mass. 60, 64, 66–68. *Sargent* v. *Wood,* 196 Mass. 1. *Tingley* v. *North Middlesex Savings Bank,* 266 Mass. 337. The right to follow the property impressed with a trust or lien is a substantial right apart from the right to an accounting. And an adjudication of the account of William Taylor as executor would not bind the representatives of the estate of Mary E. Taylor or give the petitioner the relief against them to which on the allegations of the petition he is entitled. *Ball* v. *Hopkins,* 268 Mass. 260, 273, (compare *Malden Trust Co.* v. *Brooks,* 276 Mass. 464, 471,) *Buzzell* v.

*Schulz*, 273 Mass. 372, 373, 375. The principle established by a long line of decisions that an executor is entitled to have his accounts settled in the Probate Court sitting in probate and cannot be compelled by suit in equity to account or to transfer property of the estate before his account has been settled (see, for example, *Foster* v. *Bailey*, 157 Mass. 160; *Green* v. *Gaskill*, 175 Mass. 265, 269, and cases cited; *Allen* v. *Hunt*, 213 Mass. 276; *Storer* v. *Coggan*, 260 Mass. 515, 517,) does not go so far as to preclude a suit in equity by a successor in the trust to reach specific property of the estate in the hands of a stranger. Compare *Holmes* v. *Holmes*, 194 Mass. 552, 555–556, 560.

2. The petition is within the jurisdiction in equity of the Probate Court.

The Probate Court under G. L. (Ter. Ed.) c. 215, § 6, has jurisdiction within the scope of general equity jurisdiction "of all cases and matters relative to the administration of the estates of deceased persons . . . and, in cases involving in any way the estate of a deceased person . . . to trusts created by parol or constructive or resulting trusts." For reasons already stated the petition is within the scope of general equity jurisdiction. And it is within the statute here quoted as a case relative to the administration of an estate of a deceased person, if not on other grounds. *Coffey* v. *Rady*, 267 Mass. 301, 304–305. See also *Malden Trust Co.* v. *Brooks*, 276 Mass. 464, 471, and cases cited.

Third. The petition is not multifarious.

This question is raised by the seventh ground of demurrer. For reasons already indicated the petition does not combine, as contended by the respondents, a proceeding in probate and a proceeding in equity.

The respondents do not rely upon the eighth, ninth and tenth grounds of the demurrer. It follows that the interlocutory decree sustaining the demurrer and the final decree dismissing the petition must be reversed and an interlocutory decree entered overruling the demurrer.

*Ordered accordingly.*