## ELI C. BEERS *vs.* ISAAC PROUTY AND COMPANY.

Worcester.    October 4, 1909. — October 18, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.    *Evidence,* Presumptions and burden of proof.

At the trial of an action by an employee against his employer to recover for injuries received by reason of his fingers being cut off in a machine in which they became caught, it appeared that there were two shippers for controlling the running of the machine, a wooden shipper and an iron shipper or brake, and that, upon the plaintiff's fingers becoming caught in the machine and upon his directing a workman, who was working with him on the machine and subject to his orders, to "throw the power off," the fellow workman turned the power on at the iron shipper or brake, although he should have turned it off by the wooden shipper. There was evidence tending to show that the fellow workman had worked on the machine previously to the accident and in a capacity where it was his duty, at the stopping of the factory at noon or at night, to throw off the power by use of the wooden shipper. The fellow workman, who still was in the employ of the defendant, called by the plaintiff as a witness, testified in direct examination that he did not remember that he ever was told anything about the wooden shipper; on cross-examination he stated that at the time of the trial he fully understood about it; on redirect examination he stated that he understood about it at the time of the accident. It appeared that at a former trial of the action the fellow workman had been asked the question as to the wooden shipper, " Did you know at that time which way to push it to put the power on and which way to push it to put the power off ?" and had answered, " I don't know. I may have made a mistake. I am not sure." *Held,* that the statement made by the fellow workman at the former trial warranted the jury in not believing his statement in redirect examination at this trial, to the effect that he did understand the wooden shipper at the time of the accident, although it was not in itself evidence of lack of such understanding at that time on his part; but, *also,* that there was evidence from which the jury were warranted in finding that the fellow workman was at the time of the accident an incompetent servant by reason of his failure to understand the machine.

Facts cannot be established by not believing witnesses who deny them, but, in order to justify a finding of them, there must be such affirmative evidence as, if believed to be true, with the inferences of fact that properly may be drawn from it, will support the finding.

TORT for personal injuries received by the plaintiff while in the defendant's employ because, upon his fingers being caught in a machine and upon his immediately giving an order to "throw off the power" to one St. Hillaire, who was working on the machine with him and subject to his orders, St. Hillaire did not obey the order, which would have stopped the machine and released the fingers, but turned the power on and cut off the fingers. Writ in the Superior Court dated March 27, 1907.

The case previously was before this court on exceptions by the plaintiff to a refusal by the judge presiding at the former trial to give certain rulings, and is reported in 200 Mass. 19.

The second trial was before *Gaskill*, J. The grounds of exceptions by the defendant, alleged after a verdict for the plaintiff, are stated in the opinion.

*C. C. Milton*, for the defendant.

*M. M. Taylor*, for the plaintiff.

LORING, J. After the decision, which is reported in 200 Mass. 19, there was a second trial of this action, at which the plaintiff had a verdict. At the close of the evidence at that trial the defendant asked the presiding judge to rule that there was no evidence that St. Hillaire was an incompetent fellow servant, except that he could not speak English. This was refused, and the only exception before us is one taken to the refusal to give that ruling. In answer to a question put to them by the judge the jury stated that they found incompetence on the part of St. Hillaire on this ground : "To understand the machinery, not properly instructed about the machinery."

We are of opinion that there was evidence that St. Hillaire was an incompetent servant by reason of his failure to understand the machine here in question.

The jury were warranted in finding that St. Hillaire knew that the plaintiff's fingers had been caught between the block and the mortise on his setting the plunger in motion by turning the iron brake. The thing that ought to have been done under those circumstances was to turn all power off the machine by the wooden shipper handle, as the plaintiff immediately saw and upon which he acted in telling St. Hillaire to " throw the power off."

St. Hillaire, who was still in the employ of the defendant at

the time of the second trial, seems to have been put upon the witness stand by the plaintiff. On his direct examination he was asked what was told him when instructions were given to him as to the machine. In his answer he said nothing about the overhead wooden shipper which threw off and on the belt leading from the main shaft. He was then asked " Did he ever tell you anything about this wooden shipper that was up, or over your head ? " to which the witness answered, " I don't remember he did."

It appeared from the cross-examination of this witness that at the time of the second trial he fully understood the operation of this wooden shipper. On redirect examination he was asked if on the day the plaintiff was hurt he understood it, and he answered " I did understand it." The plaintiff then put in evidence the testimony given by this witness at the first trial, to wit : " Q. Did you know at that time which way to push it to put the power on and which way to push it to put the power off ? A. I don't know, I may have made a mistake, I am not sure."

It appeared from the testimony of St. Hillaire that he had been working for the defendant for about six months before the accident here in question. He testified that he never had worked on the machine with the plaintiff before the day of the accident. The accident happened at about half past eight o'clock, and the shop started running at seven. But St. Hillaire testified : " Before the day of the accident he had worked on the machine with Arthur Tower, in the capacity of catcher." " He put me at first to work cornering on a small machine with a knife to take off the corners of boxes. In operating it the operator stepped on a treadle. You got the power into the machine by stepping on a treadle that would start the machine up. There was no overhead shipper on that machine. I was expected to put the power on. There was one pulley on the machine ; one that there was a belt on. After the witness got through working on that machine he went to catching boxes on the same machine upon which Beers was hurt. Witness worked there whenever they needed him and whenever they wanted him, several times a week. Witness had worked many times catching boxes with Arthur Tower. I don't remember whether I ever worked with Dumas on the machine or not." Dumas tes-

tified: "I had seen St. Hillaire working at the machine with Mr. Tower quite a few times."

The statement made by St. Hillaire at the first trial warranted the jury in not believing his testimony at this trial, namely, that he did understand the operation of the wooden shipper at the time of the accident. But it was not evidence that he did not understand it at the time of the accident. See Field, J., in *Morse* v. *Hill*, 136 Mass. 60, 70.

The evidence at this trial warranted a finding that no instructions as to the operation of the wooden shipper ever were given to St. Hillaire by the defendant.

The defendant's contention is that on the uncontradicted testimony St. Hillaire must have known how the wooden shipper operated. The plaintiff testified: "When the work is stopped at noon and night you are supposed to take off the power. That is, not simply to stop the machine by the iron shipper [or brake], but to throw the power off by the wooden shipper. We get the signal to stop work when the whistle blows. As between the feeder and catcher, at noon and night it is the duty of the catcher to throw the power off." St. Hillaire's testimony as to the work which he had done on this machine before the day of the accident has been already set forth in full. The learned counsel for the defendant has argued with force that on this testimony St. Hillaire must have understood the operation of the wooden shipper.

But on the whole evidence we are of opinion that that was a question for the jury. If St. Hillaire's testimony as to the number of times he had worked on this machine is to be taken to be true, it is also true, or might have been found by the jury to be true, that he never was instructed by the defendant as to the operation of the wooden shipper handle. When the accident happened he did not do what ought to have been done by a man who understood the operation of the machine including the wooden shipper handle and who kept his head. It is for the jury to say why it was that at the critical moment St. Hillaire did the wrong thing. That is to say, whether it was because he never had learned the operation of the wooden shipper, or because he lost his presence of mind.

*Exceptions overruled.*