ROBERT B. HYSLOP *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   January 16, 1911. — March 4, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Negligence.   Railroad.   Evidence,* Presumptions and burden of proof.

If a railroad corporation receives a freight car, which is loaded with fixtures for a restaurant conducted by a lessee of the corporation in its station, and places the car on the track third from the station opposite the door of the restaurant, which is the most convenient place for unloading the fixtures but also is a place attended with great danger because the two intervening tracks are the main tracks of a division of the railroad, on which trains pass frequently in opposite directions, it becomes the duty of the railroad corporation to take the precautions necessary to protect the men engaged in the work of unloading the car after the unloading begins and while it lasts, but this responsibility does not arise until the time for unloading comes, and, if before the consignee of the fixtures or the seller of the fixtures, who has agreed to unload and install them, has been notified by the railroad corporation that the car is ready for unloading, the seller of the fixtures orders his workmen to start to unload it and one of the workmen on his way to the car is run over by a train on one of intervening main tracks, there is no negligence or evidence of negligence on the part of the railroad corporation.   In such a case the fact that the car has been brought up to the place from which it ultimately is to be unloaded does not justify the consignee in inferring that the time for unloading has come.

The fact that a jury have a right to disbelieve certain testimony does not make such disbelief affirmative evidence to the contrary, its only result being to eliminate the testimony disbelieved.

TORT for personal injuries alleged to have been sustained by the plaintiff on October 21, 1905, from being run over by a train of the defendant at its station on its Fitchburg division at Greenfield.  Writ dated March 12, 1906.

In the Superior Court the case was tried before *De Courcy,* J., together with another action for the same injuries against the plaintiff's employer, one McLean.

The following facts appeared :

The plaintiff was a carpenter in the employ of McLean, a maker of store fixtures in Boston.  One Wood was the proprietor of a restaurant in the station of the defendant's railroad at Greenfield.  He occupied two rooms, one a dining-room and the other a kitchen, under a written lease from the defendant. Wood made a contract with McLean whereby McLean was to make and install new fixtures in the dining room.  When the fixtures were made, McLean shipped them over the defendant's railroad from Boston to Greenfield, consigned to Wood. They filled a furniture car.  This car was transported in usual course and arrived at Greenfield.

McLean and his men, including the plaintiff, went to Greenfield by a regular passenger train.  They never had been there before.  The station at Greenfield serves two divisions of the railroad.  Trains from Boston on the Fitchburg division draw in on the left; those from Springfield on the Connecticut and Passumpsic division draw in on the right.  These are the main lines.  The second track from the station on the left is the main line for Boston.  The second track from the station on the right is the main line for Springfield.  The approach to the station is through a freight yard with many tracks.  The furniture car, after reaching the Greenfield yard, was shifted to a track on the Connecticut and Passumpsic Division.  It was on the third track on the right side of the station and next to the main track for south bound trains.

McLean and his men reached the station on the left hand side.  Wood met them.  They went inside and had dinner. During dinner they saw the furniture car go by the window on

a track outside on the right. When dinner was over, McLean directed them to go to the car. The plaintiff left the room a short distance behind a fellow workman. The other workman started along up the station platform. The plaintiff started across the platform and when about four or five feet from the edge of it looked in both directions. Thence he walked, without looking again, and was struck by the engine of a passenger train from the south on the second track.

The evidence at the trial and the rulings of the judge in regard to the admission of evidence are described in the opinion.

By agreement of the parties a verdict was returned for the defendant in the action against McLean. In the action against the railroad corporation the judge ordered a verdict for the defendant, and by agreement of the parties reported the case for determination by this court.

If upon the evidence legally admissible against the defendant railroad corporation the jury would be warranted in returning a verdict for the plaintiff against that defendant, judgment was to be entered for the plaintiff in the sum of $12,000 with costs; otherwise, judgment was to be entered on the verdict for the defendant railroad corporation.

*A. T. Smith*, (*C. W. Bartlett* with him,) for the plaintiff.

*A. R. Tisdale*, for the defendant.

LORING, J. The plaintiff was run down by a passenger train of the defendant railroad corporation as he was crossing its two main tracks at Greenfield to unload a freight car on the third track, the track next beyond the two main tracks. The freight car in question was loaded with fixtures for the restaurant in the Greenfield station which Wood, the proprietor of the restaurant, had bought of one McLean, the plaintiff's employer. By the terms of the agreement of purchase McLean was to put the fixtures in place in the restaurant, and McLean's son as foreman had come from Boston on the day in question with four workmen to do that work. The plaintiff was one of these workmen. We shall hereafter speak of McLean's son, the foreman, as McLean.

The jury were warranted in finding that when the plaintiff undertook to cross the intervening tracks to unload the freight car it had been placed on the third track, in the position in

which it was when finally unloaded; and that it had been placed there by the defendant's yard crew under orders given by its yard master.

The point on the third track where the car had been placed was opposite the door of the restaurant and was separated from it by the platform and the two main tracks of the Passumpsic Division of the defendant's railroad. The main tracks of the Fitchburg Division were on the other side of the station. It is manifest that the point selected for unloading the car was the nearest point to the restaurant and so the most convenient. But it is equally manifest that the work of unloading the car at that point was attended, or might be attended, with great danger. Under these circumstances it became the defendant's duty, when the unloading began and while it lasted, to take the necessary precautions to protect the men engaged in the work of unloading it, *Bachant* v. *Boston & Maine Railroad*, 187 Mass. 392, that is to say, to protect McLean's employees who were to do the work of unloading for Wood the consignee.

The presiding judge was right in directing a verdict for the defendant because the plaintiff failed to prove that at the time of the accident the defendant was ready to have the work of unloading begin. This case against the railroad was tried with one against the plaintiff's employer. During the trial the presiding judge admitted all evidence competent against either defendant, reserving the question of its admissibility against a particular defendant to be decided at the close of the evidence.

There was great conflict in the evidence. But, taking the view of it most favorable to the plaintiff, the facts which the jury were warranted in finding were these: The foreman with the plaintiff and his fellow workman arrived on the passenger train from Boston at 12.30. They were met by Wood. The foreman asked Wood whether the car containing the fixtures had arrived. Wood said that it had and that he would have it brought up. He also told the foreman to leave their overalls and tools in the kitchen and go into the restaurant and have dinner. There was some fifteen minutes delay in the dinner. But while they were eating Wood came to the foreman and said " The car is here. Is that all right for you? " and McLean looked up, saw the car in the position it was in when the accident happened

and when it was finally unloaded, and said it was.  After dinner and after the men had put on their overalls and got their tools, McLean told the plaintiff to go out and open the car and it was in obedience to that order that the plaintiff crossed the south-bound track and was in the act of crossing the northbound track when he was run down by the passenger train which arrived at Greenfield from Boston at 1.37.  There was no direct evidence that the defendant had authorized Wood, the consignee of it, to begin to unload the car.  Wood, who was called as a witness by the plaintiff, testified that he left the station at one o'clock and was away until after the accident.  He further testified that so far as he could remember " he had no talk with the station agent at Greenfield in regard to the car upon that day."  The station agent, who also was called as a witness by the plaintiff, testified that he left the station at one o'clock on that day and returned about two; that according to the practice of the defendant a yard master would place a car where it was to be unloaded if he knew where that was, but that according to the practice of the yard " the car must not be unloaded until the parties have been notified that the car is placed ready for unloading and after that time, in a place like that, there would be protection. . . . The agents or some of his representatives would be on hand to see that while they were carrying the counters over or unloading that there were no trains coming or to notify them of the ap-proach of any train. . . . I was the only one to determine when a car should be unloaded."  In addition he testified that " he had not notified the consignee, Mr. Wood, that this car was ready for him to unload . . . that at the time he was present he had not told Mr. Wood or anybody that the car was ready to unload."

The plaintiff has contended that there was evidence which warranted the jury in finding that the station agent told Wood before the plaintiff crossed the tracks that the car was ready to be unloaded.  The evidence on which this contention is made was elicited on the redirect examination of the station agent. He was then asked if he notified Wood at any time in any way before the time that the car was unloaded that he had deter-mined that it should be unloaded, and he said, " I presume I did. . . . I saw him or his head man, undoubtedly."  Then in

answer to the question " What time of day was it that you saw him," he answered, " After I returned from my luncheon." He testified further that " it must have been at the station, of course," and in answer to the question, " You saw Mr. Wood at the station," he answered, " I can't say that I did." All that this meant or could be found to mean was that he told Wood that the car was ready to be unloaded before it was in fact unloaded after the accident. It is not a statement that he told Wood before 1.37 o'clock that the car was ready to be unloaded then, and it does not warrant the jury in finding that he told him that before that hour.

The fact that this car had been brought up to the point from which it was ultimately to be unloaded did not warrant Wood the consignee in inferring that the time for unloading it had come.

The plaintiff has insisted that the jury were warranted in disbelieving the station agent and Wood. But his case is not helped if they did disbelieve either or both of them. The fact, if it is a fact, that the jury disbelieved Wood and the station agent when they testified that no notice to unload was given is not evidence that such notice was given. *Beers* v. *Prouty & Co.* 203 Mass. 254. The only result of that is that their testimony is eliminated. If their testimony is eliminated the circumstances only are left, and we have already held that the circumstances did not sustain the burden (which was on the plaintiff) of proving that the defendant was ready to have the consignee begin to unload the car.

The presiding judge ruled that the conversation between Wood and McLean's foreman was not admissible as against the defendant, and (as we have said) directed a verdict for the defendant. For the reasons given this ruling was right.

In accordance with the terms of the report the entry must be

*Judgment for the defendant.*