## NASHVILLE, C. & ST. L. RY. CO. *v*. MYERS.

### (*Nashville.* December Term, 1916.)

1. **RAILROADS.** Injury to shipper's employee. Duty to inspect cars.

A railway furnishing cars to a manufacturing shipper is bound to exercise ordinary care to avoid injuring servants of such shipper while loading the car, since such servants are not trespassers nor mere licensees. (*Post, pp.* 146, 147.)

Cases cited and approved: Ladd v. New York, etc., R. Co., 193 Mass., 359; Hyslop v. Boston R. Co., 208 Mass., 362; D'Almeida v. Boston, etc., R. Co., 209 Mass., 81; Roddy v. M. P. R. Co., 104 Mo., 234.

2 **RAILROADS.** Injury to person loading cars. Duty to inspect.

The principle underlying the liability of the railway company to the employee of a shipper for negligence of the railway company in furnishing a defective car which injures the employee is that the railway company is held to have selected the car and to have furnished it as a fit instrumentality for the purpose of shipping the goods to be loaded in it, and any defect existing which results in injury to those engaged in loading it is attributable to the negligence of the railway company in failing to inspect the car and discover and remedy the defect. (*Post, p.* 147.)

3. **RAILROADS.** Injury to shipper's employee. Rules.

Where a carrier had a rule requiring shippers to present the inspection card with the bill of lading, the inspection to be made before loading the car, failure to observe this rule by the shipper exonerates the railway company from liability for negligent condition of the car, unless placing it on the loading track was an implied invitation to load it; such rule being within the power of the railway to make. (*Post, pp.* 147, 148.)

---

*On liability of carrier for personal injuries to consignor or consignee of their employees, caused by unsafe car, see notes in 12 L. R. A., 746; 9 L. R. A. (N. S.), 857.

4. **RAILROADS.** Injury to shipper's employee. Rules.

Where the railway had a rule requiring shipper to present inspection tag with bill of lading and the shipper knew of such rule, the mere act of placing an uninspected car on the loading track of the shipper did not give him an implied invitation to load the car. (*Post, pp.* 148, 149.)

5. **RAILROADS.** Injury to employee of shipper. Rule.

Nor did it extend an implied invitation to an employee of the shipper to use the car, since the carrier owed him no duty save through his relationship with the shipper. (*Post, pp.* 149, 150.)

6. **RAILROADS.** Injury to employee of shipper. Rule. Custom.

Where the carrier had a rule requiring the shipper to present an inspection tag with the bill of lading and required inspection to be made before loading, a mere showing that one car was loaded without such inspection before loading was insufficient to establish custom. (*Post, pp.* 150, 151.)

---

### FROM FRANKLIN.

---

Appeal from the Circuit Court of Franklin County. —FRANK L. LYNCH, Judge.

GEO. E. BANKS and TATUM, THACH & LYNCH, for Myers.

CLAUDE WALLER, FITZGERALD HALL and ESTILL & CROWNOVER, for the Railroad Co.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

This is an action for personal injuries brought by Myers against the railway company. Myers was an

employee of the mill company, and as such it was his duty to load flour into the cars of the railway company. The mill company had received a carload of wheat which was placed by the railway company upon an unloading track and it was unloaded by the mill company. Later the railway company placed the same car upon the loading track of the mill company, which ran near to the mill building. The plaintiff below, under orders of his employer, together with other servants, loaded the car with flour to be shipped over the line of the defendant railway company to customers elsewhere. After this was done, he attempted to close the door in the ordinary way. The door was suspended upon a track, and was intended to slide upon the track so as to close the opening in the side of the car. Its fastenings were insecure, and when Myers attempted to close it, it fell upon him and broke his leg.

He brought this suit against the railway company, and after averring the facts above stated, it was averred that plaintiff's injuries were caused by the negligence of the railway company in allowing the car to become and remain in a broken condition, which condition ought to have been known by it in the exercise of ordinary care. The railway company pleaded not guilty, and in the proof set up the following rule as explaining and excusing the condition of the car:

"Effective Monday February 23d, all cars that are to be loaded with articles that are liable to damage

account of leaky roof or defect in car must first be examined by our car inspector, Mr. J. G. Sargent. If car is found to be in good condition he will place under the number of car inspection certificate form number 767 which must be detached from car and presented to me with bill of lading, as under the ruling I am prohibited from signing bill of lading unless this card is presented to me properly filed in and signed by Mr. Sargent.

"This ruling has recently been made by the company to avoid claims account of shipments being loaded in defective equipment.

"Mr. Sargent will accompany the switch engine every morning and inspect all cars in hand with you, if at any time during the day you wish to load a car that has not been inspected notify this office and we will arrange for Mr. Sargent to make inspection with as little delay as possible."

It is also shown without dispute that it was the practice at Tullahoma, under the foregoing rule, for an inspector of the defendant railway company to inspect cars anywhere on the yard wherever they were found. The facts averred in the declaration and stated above with respect to the accident and injury are also undisputed. The agent of the railway did not know that the car was being loaded by the mill company, and the mill company did not make application, under the rule, for inspection. The plaintiff was an employee of the mill company and not of the

railway company, and did not know of the existence of the rule.

There were verdict and judgment for the plaintiff in the sum of $500, and this judgment, upon appeal, was affirmed by the court of civil appeals.

That court was of opinion that the railway company is liable to plaintiff for two reasons: First, that placing the car upon the loading track of the mill company was an implied invitation to the plaintiff to load the car, and if he was injured by a defective condition of the car, the railway company would be liable to him for injuries sustained because of such defective condition; second, it was of opinion that the rule promulgated was not intended by the railway company to prevent the character of accident and injury which occurred, and therefore the violation of the rule by the mill company is not a defense to the railway company's liability.

The assignments of error in this court present the general question of the liability of the carrier for accidents of this nature when the shipper is acting in violation of the rule.

We think there is no doubt but what the railway company was bound to exercise ordinary care to avoid injuring the plaintiff while loading the car, other questions out of the way. Plaintiff was not a trespasser, nor a mere licensee. The service he was rendering facilitated the business in which the defendant is engaged, and forwarded the business of the mill company in shipping and the railway com-

pany in carrying the goods. Thompson on Negligence, vol. 2, section 1841; *Ladd* v. *New York, etc., R. Co.,* 193 Mass., 359, 79 N. E., 742, 9 L. R. A. (N. S.), 874, 9 Ann. Cas., 988; *Hyslop* v. *Boston R. Co.*, 208 Mass., 362, 94 N. E., 310, 21 Ann. Cas., 1121; *D'Almeida* v. *Boston, etc., R. Co.,* 209 Mass., 81, 95 N. E., 398, Ann. Cas., 1913C, 751; *Roddy* v. *M. P. R. Co.,* 104 Mo., 234, 15 S. W., 1112, 12 L. R. A., 746, 24 Am. St Rep., 333.

The principle underlying the liability of the railway company to the employee of a shipper for negligence of the railway company in furnishing a defective car which injures the employee is that the railway company is held to have selected the car and to have furnished it as a fit instrumentality for the purpose of shipping the goods to be loaded in it, and any defect existing which results in injury to those engaged in loading it is attributable to the negligence of the railway company in failing to inspect the car and discover and remedy the defect. The court of appeals held to the same effect, and in so doing, we think it was correct.

The rule in evidence in this case, if observed, would have afforded the railway company an opportunity to inspect the car. It is true that the purpose of the rule was to prevent leaks and wastage of the contents of the car, but it is obvious that an inspection of the car should have discovered the defect which resulted in plaintiff's injury. An inspector, looking for leaks in roof and other places where wastage

of the contents might occur, could not have failed, upon the exercise of reasonable diligence, to have discovered the defective condition of this car; and, if he had so failed, his omission would have been attributable to the railway company and would have rendered it liable. But we think it entirely just and reasonable that the railway company should be permitted to promulgate rules which would enable it to inspect its equipment before the shipper loads them, and a failure to observe a reasonable rule which has been brought to the notice of the shipper would exonerate the railway company from liability for failure to inspect. If the railway company is not notified of the intention of the shipper to load a car, it cannot have the opportunity to make proper inspection, and a rule which secures such opportunity to the railway company is just and reasonable. There was no particular place for the inspection, and this is shown upon the face of the rule as well as in the evidence. The failure to observe this rule by the shipper exonerates the railway company from liability for the negligent condition of the car, unless it can be said that placing the car upon the loading track of the mill company was an implied invitation for the shipper to load it.

An implied invitation arises from the conduct of the parties, and casts an obligation upon the railway company to exercise reasonable care towards the plaintiff. Its essence is that the railway company knew, or ought to have known, that placing the car upon the loading track of the mill company might give rise

in the mind of a reasonably prudent person to a natural belief that it intended that the car should be loaded at the time and place. The implied invitation in this case could arise solely out of placing the car upon the loading track. The shipper had knowledge of the rule concerning inspection, and as it is shown that there was no particular place for inspection, and also that inspection must be made before loading, it cannot be said that the shipper could rely upon an implied invitation from the fact of placing the car on the loading track. Is the case different with the shipper's employee?

We have seen that the railway company's liability, as charged in the declaration and as established by the authorities is for failure to properly inspect the car. The railway company's duty to the plaintiff arises solely out of its relations with his employer, the shipper. No contractual relations existed between the plaintiff and the railway company. Contractual relations did exist between plaintiff's employer and the railway company, and what plaintiff was doing at the time of his injury was forwarding the contract between the shipper and the railway company. For this reason the railway company is bound to exercise ordinary care in selecting and forwarding the car for the use of the shipper. But the negligence at last is in the railway company's failure to inspect the car. Its furnishing the car without inspection, or without reasonable provision for inspection, and placing it upon the loading track, would be an implied invita-

tion to the shipper to load the car. This particular car was placed upon the loading track for the purpose of being loaded, but before an implied invitation to commence loading can be said to have existed, it must be shown that the railway company was ready for the loading to begin. It is clearly shown that it was not. The inspection tag was not on the car, the shipper had not notified the agent of the railway company that he wanted to load the car, and had not given it an opportunity to inspect the car. If the rule above set out had not been promulgated, it might well be said that the act of placing the car on the loading track without more would be an implied invitation to the shipper to load it; but the rule expressly forbids the very thing that was done, and we think that if the car had been inspected, the injury would have been prevented; and, at all events, the railway company would be liable for improper inspection. *Hyslop* v. *Railroad,* supra.

It is insisted that the jury must have inferred that the practice under the rule had been to permit cars to be loaded, and then to inspect them and give a bill of lading, and it is said that the testimony of the defendant's agents to the contrary is in conflict with the facts and circumstances of the case, and shows that the rule was construed by them to mean that the inspection could take place, and did take place, after the car was loaded. This inference, is sought to be made solely from the fact that the shipper in this instance ordered the defective car to be loaded,

Nashville, C. & St. L. Ry. Co. v. Myers.

and it was loaded. We think this fact falls far short of showing a custom to violate the rule, and the testimony of the agents of the railway company directly to the contrary, being uncontradicted, must be accepted as the truth of the transaction. We have seen nothing in the record which indicates that the car was delivered to the mill company to be loaded before it was inspected, or that the railway company was ready that the loading should begin. We think the railway company cannot be held liable for failure to inspect the car when the shipper proceeded to have it loaded in its defective condition in violation of the rule. The result is that the court of civil appeals is reversed, and the suit is dismissed.