THE STATE OF CONNECTICUT *vs.* JOSEPH POPLOWSKI.

First Judicial District, Hartford, May Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

It is not a sufficient basis for the finding of a fact by the trial judge that he disbelieves the witnesses who deny its existence.

Section 6439 of the General Statutes provides that "every person entitled to the custody of any horse . . . who shall permit the same to be at large upon any highway or common, without a keeper, shall be fined . . ." *Held* that the word "permit," as used in the statute, was intended to embrace not only an affirmative or voluntary act by the custodian of the horse, but also a failure on his part to use the reasonable care which a careful and prudent person would exercise under the same circumstances.

In the present case, the trial court found that the defendant was the owner and entitled to the custody of two horses which he turned loose and permitted to be at large without a keeper upon a State highway where one of them collided with an automobile being operated thereon. *Held* that the evidence, together with the reasonable inferences to be drawn therefrom and the failure of the defendant to offer a credible explanation of the presence of his horses on the highway, amply supported this finding.

The trial court also found, in effect, that the defendant made no attempt to restrain the horses, but knowingly, intentionally and deliberately permitted them to go at large. *Held* that, while this finding must be stricken out as unsupported by evidence establishing it beyond a reasonable doubt, the trial court's conclusion that the defendant had violated the statute was justified by the further finding that he had failed and neglected to tether, impound or otherwise restrain his horses as ordinary care and prudence required.

Argued May 4th—decided May 29th, 1926.

INFORMATION charging the accused with permitting his horses to be at large upon a public highway without a keeper, brought to the Superior Court in Tolland County and tried to the court, *Brown, J.;* judgment of guilty, and appeal by the defendant. *No error.*

*Samuel B. Harvey,* for the appellant (the accused).

*Thomas F. Noone,* State's Attorney, for the appellee (the State).

HAINES, J. The record makes it clear, that unless the finding of facts is changed the judgment must stand. The defendant asks a correction of the finding in several important particulars, and attaches a transcript of the entire evidence for our examination. From that portion of the finding not thus challenged, it appears that two work horses were at large upon the public highway which leads from the so-called Hartford-Willimantic highway to Columbia; that about eight p. m. while one Robinson with his wife and daughter-in-law in an automobile were proceeding at a moderate speed upon said highway, toward their home in Columbia, the night being dark and foggy with some rain, these horses suddenly appeared before the machine in such close proximity that while the driver successfully avoided one of them, he was unable to avoid the other, and the automobile came into violent collision with that horse, causing a considerable damage to the machine and swerving it off the road where the driver brought it to a stop. The court reached the conclusion that this defendant was the owner and entitled to the custody of these horses .which were thus at large upon the public highway.

The court further found as follows: "Prior to the time of the collision, the defendant, who was the owner and entitled to the custody of both horses, turned them loose and permitted them to be at large without a keeper on the old dirt road, Columbia road and the State road, to the extent hereinbefore set forth, and the two horses which crossed the road as alleged in paragraphs 9 and 10 hereof were these two horses of the defendant."

This paragraph is attacked as found without evidence. We have read the evidence with care and are satisfied that the conclusions of fact stated in this paragraph are supported in part by direct evidence and in part by legitimate and reasonable inference deduced from the testimony and the circumstances. The only legitimate question of which the paragraph is susceptible relates to that which says the defendant "turned them loose and permitted them to be at large."

In the next two paragraphs of the finding the court expressly finds that the circumstantial statements of the defendant as to the whereabouts of the horses and the cause of the injuries on one of them, were false. The defendant said, in substance, that the wounds had been caused by a wire fence in which the horse had been entangled the previous morning; that that horse had been confined in the defendant's orchard all that day and evening until put into the stable by the defendant; that the other horse had, after being worked that day, been confined in a separate pasture until put into the barn by the defendant; and that both lots were adequately fenced and the gates kept closed all the time these horses were so confined.

It is true, as counsel for defendant says, that finding this explanation false does not in itself justify a finding of a contrary state of facts. "Facts cannot be established by not believing witnesses who deny them." *Beers* v. *Prouty & Co.*, 203 Mass. 254, 257, 89 N.E. 557; *Morse* v. *Hill*, 136 Mass. 60, 70; *Wallace* v. *Berdell*, 97 N.Y. 13, 21. On the other hand, it must be recognized that someone had the legal custody and control of the horses, and was under a duty to use due care to keep them in restraint and not allow them to roam at large on the public highway. That person, the court justifiably found, was the defendant.

That he failed to restrain the horses is quite apparent. The defendant gives no valid explanation of their presence in the highway. He does not claim that they escaped from a keeper or from an enclosure or from a tether. He does not admit that any fence or gate was down, but asserts that such was not the case. Under the circumstances, it is a legitimate conclusion, and indeed the only logical one which a reasonable person could reach, that the horses were permitted by the defendant himself, to be in the highway without a keeper. That they were in fact there, and that the defendant had not prevented it, is too clear for argument. If this be the meaning of the finding, it is a reasonable conclusion from the evidence, and we think it should stand, though the significance of the word "permit' as used in the statute, will receive consideration later.

Objection is made to paragraph twenty-five of the finding, which is to the effect that the defendant had previously allowed his horse to run loose on the highway. It is claimed that this was found without "evidence of any kind either direct or by inference." The transcript shows that the defendant admitted on cross-examination, that a horse of his had been so allowed the previous year, and that the sheriff came to him about it. This finding should stand.

Two other findings—21¼ and 21½—are objected to for the same reason. These are amplifications of paragraph twenty-one, to the effect that the defendant made no attempt to restrain the horses, but knowingly, intentionally and deliberately permitted them to go at large, and that he failed and neglected to tether, impound or otherwise restrain them as ordinary care and prudence required.

These conclusions are inconsistent in that an intentional turning loose of the horses contradicts the

conclusion that they were loose merely by the defendant's neglect. Reading the evidence with care, we are unable to find any sufficient basis from which the inference could reasonably be drawn that the defendant made no attempt whatever to restrain these horses, though, as we have already said, the evidence is clear that he failed and neglected to restrain them. That he probably made no attempt at restraint, and did turn them loose, may be true, as the trial court found, but this is a criminal case and the essential facts must be established beyond a reasonable doubt, and we are not prepared to say that that doubt does not exist. In so far as the finding states that the defendant knowingly, deliberately and intentionally turned the horses loose, and made no attempt to restrain them, the finding cannot stand. As thus corrected it should stand.

This brings us to the question whether the statute makes this a punishable offense. Its pertinent provisions are the following: "Every person entitled to the custody of any horse, . . . who shall permit the same to be at large upon any highway or common, without a keeper, shall be fined. . . ." General Statutes, § 6439.

We are therefore required to determine the scope and meaning of the word "permit" as used in this statute—whether the prohibition covers not only a voluntary turning loose, but a neglect to restrain where the same result follows. The finding as corrected shows the defendant guilty of this neglect, but not of the voluntary act of turning the horses loose.

The effect of the claim made by defendant's counsel is to construe the statute in such a way that it does not penalize one who, by his mere negligence, permits his horses to roam the highway, and that it is incumbent upon the State to show that they were loose by the affirmative and voluntary act of the defendant.

The first case cited in his brief is that of *Selleck* v. *Selleck,* 19 Conn. 501. In that case the statute provided "that if the owner of any ram shall suffer him to go at large," etc. The word "suffer" as thus used has a practically identical meaning with the word "permit" in the statute we are considering. In defining the former word this court there said (p. 505): "To suffer an act to be done, by a person who can prevent it, is to permit or assent to it—to approve of it. . . . It implies a willingness of the mind . . . and so the legislature understood it." And then added: "It may be difficult to fix with precision the exact degree of diligence necessary to be observed under this provision of the law. It must be regulated somewhat by the propensities of these animals to escape and by the common usages of diligent farmers in restraining them. That strict care was intended to be enforced by the legislature we infer from the obvious purpose of the law, and from the fact that a penalty is annexed for a violation of it; but not such a degree of care as amounts to an obligation on the part of the owner . . . to restrain them, at all events, unless prevented by the intervention of some uncontrolable cause; nor any greater care than is usually taken by careful and prudent farmers in like cases. And if there be any want of such care, either in restraining or reclaiming . . . when at large, this would afford proof enough that they were suffered to run at large within the meaning of the law."

We have quoted somewhat at length from the above opinion to make clear a distinction in our law which should not be overlooked, viz., that if animals be at large by reason of the neglect of the owner to exercise reasonable diligence in restraining them, the owner comes within both the letter and the spirit of the statute, but if he has exercised reasonable diligence

—that of "careful and prudent farmers in like cases"—
then he is not penalized. The defendant does not ex-
plain the presence of the horses on the highway. On
the contrary, he tells a false story designed to show
that his horses were not in fact on the highway at
the time of the accident, with the evident purpose of
making the court believe that the horses which caused
the collision belonged to someone other than himself.

The construction we thus put upon this statute is
not in any way weakened, but rather strengthened, by
the other cases cited by counsel for the defendant.
*Myers* v. *State,* 1 Conn. 502; *Bulkley* v. *New York
& N.H. R.Co.,* 27 Conn. 479; *Commonwealth* v. *Four-
teen Hogs,* 10 S. & R. (Pa.) 393; *Montgomery* v.
*Breed,* 34 Wis. 649; *Howrigan* v. *Bakersfield,* 79 Vt.
249, 64 Atl. 1130; 9 Amer. & Eng. Anno. Cases, p. 282.
Some of these cases go only to the point which the de-
fendant makes, that the mere presence of the animals
in the highway without a keeper is not prima facie evi-
dence against the owner, as in the statute regarding
bulls, which contains a specific provision making it so.
General Statutes, § 6366; Public Acts of 1925, Chap.
51.

We see no reason to disagree with this contention.
In the statute last cited, the burden of showing due
diligence is thus put by the statute upon the defend-
ant. This is not so under the statute we are consid-
ering. The State must prove facts which will justify
the trier in finding beyond a reasonable doubt, that
the horses were at large in the highway without a
keeper, (1) either by the voluntary act of the owner
or custodian, or (2) by reason of his negligent failure
to restrain them as a reasonably prudent and careful
farmer would have done under like circumstances.

We think the facts as they stand in the corrected
finding are amply sufficient to establish the second

condition as a reasonable and, indeed, a necessary conclusion, and that the finding is justified by the evidence.

The obvious legislative intent in the statute is to guard the traveling public against the danger of collision with horses roaming at large on the public highways. The danger is serious, and, with the increase of motor vehicles, constantly increasing. How serious, is suggested by the facts of the present case, where the injury and perhaps the death of three persons was only averted by good fortune and the care of the driver of the car. We have therefore given the statute somewhat extended consideration. While the penalty provided is not great, its importance is much greater, and its purpose can only be carried out by such a construction as will not only deny to the owner of horses the right to turn them loose in the public highways, but will make him responsible for a failure to use that reasonable care to restrain them which the careful and prudent owner does use. We believe the construction we have given it not only conforms to precedent, but meets the requirements of reason, and effectuates the legislative intent to protect the public.

There is no error.

In this opinion the other judges concurred.