On September 27, 1941, at about 6:00 a.m., while it was still dark, the plaintiff was operating his automobile in a westerly direction on the concrete highway leading from Rockville to Hartford. The highway is a two-lane concrete road with dirt shoulders on each side. The plaintiff was driving at a reasonable rate of speed on his own side of the road and as he arrived at a point in said highway opposite land owned by the defendant, a black horse owned by the defendant suddenly appeared from the north side of said road directly in front of the plaintiff's moving automobile. The right front of the automobile struck said horse, causing injuries from which it died a few hour later. The right front and right side of said automobile were considerably damaged, the hood sprung from it and the windshield smashed. The plaintiff did not see said horse until the moment of impact although the headlights on his car were lighted. The highway at this point is bordered on both sides by open fields. On the north side there is a fairly steep bank about three feet in height which sets back about four or five feet from the highway. On the south side of the highway is an open field, practically level with the highway and enclosed with a one-strand electrically charged barbed wire fence. This field on the south side of the highway is owned by the defendant and used by him in the daytime for pasturing cattle and horses. On the day previous to the morning of this accident, cattle and horses, including the one killed in this accident, had been pastured in this field. In the late afternoon of that day all of the live stock were driven from this field into the defendant's barnyard situated several hundred feet south of the highway. The milking cows were put in the barn for the night and the young stock and horses were left in the barnyard, there to remain or wander into another pasture situated south of the barnyard and still further away from the highway. The only entrance or exit to the field which adjoins *Page 386 
the highway is through the barnyard at a wooden gateway about four feet in height and ten feet in width, which gate is hung on hinges on one end and may be fastened shut by a wire or chain to a post at the other end. On the evening before this accident this gate was closed and fastened after the cows, young stock and horses had been driven in from the field adjoining the highway.
Shortly after the accident occurred the defendant's barn man, who lives close by, was notified of it and went to assist. He testified that he found that the barnyard gate which he had closed and fastened the night before had been removed from its hinges and was found lying flat on the ground. Later it was also discovered that a part of the wire fence enclosing the field adjoining the highway had been cleanly cut as with a sharp instrument. The young stock and the mate to the injured horse were found to be in this field adjoining the highway. The injured horse was outside of the field and on the shoulder of the highway.
Section 6214 of the General Statutes, Revision of 1930, provides that "Any person entitled to the custody of any horse .... who shall permit the same to be at large upon any highway or common, without a keeper, shall be fined not more than seven dollars."
"A violation of the statute is a violation of the duty which one person owes to another in respect to person or property, and therefore is negligence of itself, and when it is the proximate cause of injury it is actionable negligence." Pietryckavs. Simolan, 98 Conn. 490, 495. Since the defendant was the owner and entitled to the custody of this horse which was at large on the highway, the scope and meaning of the word "permit" as used in the statute must be determined. This was fully discussed in State vs. Poplowski, 104 Conn. 493, 498, where the court said, quoting from Selleck vs. Selleck,
19 id. 501: "To suffer an act to be done, by a person who can prevent it, is to permit or assent to it — to approve of it.... It implies a willingness of the mind .... and so the legislature understood it.... It may be difficult to fix with precision the exact degree of diligence necessary to be observed under this provision of the law. It must be regulated somewhat by the propensities of these animals to escape and by the common usages of diligent farmers in restraining them. That strict care was intended to be enforced by the legislature we infer from *Page 387 
the obvious purpose of the law, and from the fact that a penalty is annexed for a violation of it; but not such a degree of care as amounts to an obligation on the part of the owner .... to restrain them, at all events, unless prevented by the intervention of some uncontrollable cause; nor any greater care than is usually taken by careful and prudent farmers in like cases. And if there be any want of such care, either in restraining or reclaiming .... when at large, this would afford proof enough that they were suffered to run at large within the meaning of the law." The danger to the travelling public of collisions with horses remaining at large on the public highway is serious and it is the intent of the Legislature to hold the owner responsible for failure to use that reasonable care to restrain them which a careful and prudent owner does use. State vs. Poplowski, supra.
I find that this horse was not at large by the voluntary act of the defendant; that in providing and maintaining a suitable place for the confinement of his live stock during the night and in their care and supervision the defendant has exercised reasonable diligence and that degree of care usually taken by careful and prudent farmers in like cases; that the removal of the barnyard gate and cutting of the wire fence by someone unknown created an extraordinary and unforseen circumstance not due to neglect on the part of the defendant; that the plaintiff was driving his said automobile at the time of the accident in a reasonable and proper manner and in the exercise of due care, and that in view of all the circumstances could not have avoided striking this horse which appeared suddenly before him from out of the dark.
 Judgment may be entered for the defendant on the complaint and for the plaintiff on the cross complaint.